UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CANDIDO ANTOMATTEI,

-v-

UNITED STATES OF AMERICA,

Defendant.

No. 16-cv-9992 (RJS)
No. 12-cr-322 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Petitioner Candido Antomattei, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255.  (Doc. No. 614 (the "Petition").[1])  Petitioner – who was convicted after a jury trial of conspiracy to possess with intent to distribute heroin, crack cocaine, and phencyclidine ("PCP"), in violation of 21 U.S.C. §§ 841(b)(1)(A), and using and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) – asserts that (1) his sentence following his conspiracy conviction is invalid because "the Jury never considered [his] individual culpability," and the district court sentenced him based on the quantity of drugs "from the conspiracy as a whole" (*id.* at 6–7); and (2) he received ineffective assistance of counsel because his attorney incorrectly explained conspiracy liability and did not adequately advise him of the implications of refusing the government's pretrial plea offers (*id.* at 9–10).  For the reasons set forth below, the Petition is DENIED.

---

[1] Unless otherwise indicated, all docket citations refer to the docket in Petitioner's criminal case, *United States v. Antomattei*, 12-cr-322 (RJS).  In addition, the Court cites on occasion to materials contained in the record of Petitioner's direct appeal to the Second Circuit – "App'x" refers to the appendix filed by Antomattei (2d Cir. No. 14-2187, Doc. Nos. 21–23) and "S. App'x" refers to the supplemental appendix filed by the government (2d Cir. No. 14-2187, Doc. No. 40).  In ruling on the Petition, the Court has also considered the government's response (Doc. No. 620 ("Response")), trial counsel Jill Shellow's sworn affirmation and attachments thereto (Doc. Nos. 618 ("Affirmation"); 618-1; 618-2), and Petitioner's reply (Doc. No. 622 ("Reply")).

## I. BACKGROUND

On February 28, 2013, Petitioner was indicted, along with six other individuals, for participating in a conspiracy to distribute heroin and crack cocaine in the Bronx, New York, and for using a weapon in furtherance of that crime (the "Initial Indictment").  (Doc. No. 53.)  The Initial Indictment alleged that Petitioner and his co-defendant, Adony Nina, managed the organization in question for several years, during which time Petitioner performed various tasks in furtherance of the conspiracy, ranging from delivering drugs to intermediary members of the conspiracy to selling drugs directly to customers.  (*See* App'x 115, 417–18, 547, 553–54, 565.)  At Petitioner's arraignment on the Initial Indictment, Magistrate Judge Frank Maas appointed Attorney Jill Shellow to represent him pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.  (Doc. No. 63; App'x 4.)

On September 10, 2013, a day after Petitioner had expressed discontent with Shellow's representation during a pre-trial conference, Shellow submitted a letter to the Court indicating that Petitioner wanted the Court to appoint him new counsel.  (Doc. No. 128.)  Shellow stated that she "interpret[ed] [Petitioner's] position" to be that he felt she had "not followed his instructions" and that he did not "trust [her] to act in a manner consistent with his best interests."  (*Id.* at 1.)  At a pretrial conference held the next day, Petitioner advised the Court that he and Shellow lacked "chemistry" (App'x 53–55), and that although Shellow had visited him multiple times in prison "nothing [was] being done" on his case (App'x 65–66).  The parties also discussed the government's open plea offer of 151 to 188 months' imprisonment (App'x 64–66), as well as the government's intention to seek a superseding indictment charging Petitioner, but not his co-defendants, with an additional count of conspiracy to distribute PCP (the "Superseding Indictment") (App'x 61–62).  Although the Court reserved decision on Petitioner's request for new counsel, it subsequently issued an Order denying Petitioner's request, finding that "Defendant and

Counsel [were] communicating," that "Counsel appear[ed] to be fulfilling her duties," and that Petitioner had offered "no reason that would [justify a] substitution of counsel that could not apply equally to any unhappy defendant." (Doc. No. 129.) The government thereafter sought and obtained a Superseding Indictment that charged Petitioner with participating in a conspiracy to distribute PCP in addition to the other charges previously contained in the Initial Indictment.[2]

With trial scheduled to commence on October 15, 2013, Petitioner rejected a total of three plea offers from the government. On September 23, 2013, Petitioner emailed Shellow to let her know that unless the government would agree to charge him under a different statutory provision with a lower mandatory minimum, he would not take the original plea deal discussed at the September 11, 2013 conference. (Doc. No. 618-1.) In her response a few hours later, Shellow advised Petitioner that she "ha[d] . . . spoken with the government," which would "not agree to reinstate the old offer" but was willing to offer Petitioner a new plea deal of 188 to 235 months' imprisonment. (*Id.*) Shellow cautioned Petitioner that the new deal was still "a lot better" than what he would get if convicted after a trial. (*Id.*) On September 26, 2013, Shellow again emailed Petitioner, advising him to accept the second offer since there was "more than sufficient proof for the jury to find" that he was guilty, and that if he were convicted at trial, his "sentence [would] be significantly longer than the 188-235 months offered by the government." (Doc. No. 618-2.) Shellow also advised Petitioner that should he proceed to trial, the government was likely to "file a prior felony information pursuant to Sect. 851," thereby increasing his mandatory minimum sentence to "20 years on each of the drug conspiracies." (*Id.*) Petitioner nevertheless rejected the

---

[2] The Superseding Indictment named Petitioner in three of its five counts. Count One charged Petitioner and Nina with conspiracy to possess with intent to distribute heroin and crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. Count Two charged Petitioner with conspiracy to possess with intent to distribute PCP, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. Count Four charged Petitioner and Nina with using and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii). Petitioner was not charged in connection with Counts Three and Five, which were limited to Nina and his other co-defendants. (Doc. No. 130.)

offer.  (Petition at 9.)  Finally, during a pretrial conference on October 15, 2013, Shellow confirmed

that Petitioner would not accept the government's final plea offer, which provided for a Guidelines

range of 210 to 262 months' imprisonment.  (S. App'x 52.)  The government then filed a prior

felony information based on Petitioner's prior conviction of attempted criminal possession of a

controlled substance in the fourth degree, in violation of Section 110/220.091 of the New York

State Penal Law.  (*Id*.; *see* Doc. No. 188)  The prior felony information exposed Petitioner to a

mandatory minimum term of 20 years' imprisonment on Counts One and Two.  (S. App'x 52.)

Petitioner confirmed on the record he had previously seen the prior felony information.  (S. App'x

52–53.)

Trial for Petitioner and Nina, the only other individual from the Initial Indictment who had

not pleaded guilty, began on October 15, 2013.  On October 21, 2013, during the second week of

trial, Petitioner again requested new counsel, and, in the alternative, requested to proceed *pro se*

because he and counsel had "no communication."  (App'x 216.)  Petitioner stated that he sought

new counsel because Shellow had not asked specific questions during cross-examination that he

had suggested she ask.  (App'x 216–17.)  The Court noted that there was "nothing to suggest that

Ms. Shellow ha[d] been anything other than effective," and that a "lawyer doesn't have to ask

every question put to him or her by a client."  (App'x 217.)  The Court nonetheless granted

Petitioner's request to proceed *pro se*, but appointed Shellow as standby counsel without objection

from Petitioner.  (App'x 219.)  For the remainder of the trial, Shellow continued to provide

assistance to Petitioner, including promptly voicing Petitioner's concerns regarding access to 3500

material.  (App'x 220.)

On October 31, 2013, the jury returned a guilty verdict on all counts against Petitioner and

Nina.  (App'x 703–04.)  The verdict form included special interrogatories regarding the drug

weight for each defendant.  (Doc. No. 195.)  As to Count One, the jury found that Petitioner

participated in a conspiracy to distribute or possess with intent to distribute heroin and crack cocaine, and "knew or reasonably should have foreseen that the conspiracy involved one kilogram or more of mixtures and substances containing a detectable amount of heroin . . . [and] 280 grams or more of mixtures and substances containing a detectable amount of cocaine base in a form known as crack." (App'x 703.) On Count Two, the jury found that Petitioner participated in a conspiracy to distribute or possess with intent to distribute PCP, and "knew or reasonably should have foreseen that the conspiracy involved . . . one kilogram or more of mixtures and substances containing a detectable amount of PCP." (*Id.*) It further found him guilty of "possessing a firearm in furtherance of the narcotics conspiracy charged in Count One and Count Two" and that the firearm was discharged. (App'x 704.) Immediately after the jury was excused, Petitioner asked if he could "step down" as his own counsel and requested that the Court re-appoint Shellow to represent him in connection with post-trial motions and sentencing. (*Id.*) The Court told Petitioner that "[i]f [he] would like somebody else [to represent him,] [the Court] could revisit that," but Petitioner confirmed that he "would like to have Ms. Shellow back for this." (*Id.*) The Court granted his request. (*Id.*)

Nevertheless, on January 4, 2014, Petitioner again requested new counsel, contending that "nothing ha[d] been done" with respect to his post-trial motions or appeal, and that he and counsel could "not reach common ground." (Doc. No. 233.) On January 21, 2014, Petitioner submitted a "motion to relieve counsel" on the basis that Shellow had provided ineffective assistance prior to, during, and after trial. (Doc. No. 238.) Petitioner raised a number of arguments, including that counsel failed to provide certain documents to Petitioner, that she "conspired with the Assistant United States Attorney to admit the untimely 851 information knowing it was suppose[d] to be filed before trial," and that they had never discussed the plea offers. (*Id.*) The Court thereafter held a hearing, during which it noted that "most of the allegations contained in the current motion

. . . relate[d] to things that took place before and, at the latest, during the trial," and thus did not support Petitioner's motion for new counsel now in light of his expressed desire to have Shellow represent him for sentencing.  (Doc. No. 260 at 7–8.)  The Court nonetheless granted the motion and appointed David Touger as counsel because "the nature of the allegations and . . . the tenor of the relationship at least as reflected in Mr. Antomattei's latest motion suggest[ed] . . . that it would be difficult for Ms. Shellow to continue to represent Mr. Antomattei." (*Id.* at 8.)  Touger represented Petitioner at sentencing, during which Petitioner was sentenced principally to 360 months' imprisonment – 276 months on both Counts One and Two, to run concurrently, and 84 months on Count Four, to run consecutively.  (Doc. No. 333.)

Touger filed a direct appeal on Petitioner's behalf, arguing, among other things, that the district court erred in refusing to grant Petitioner's request for new counsel after the September 11, 2013 hearing.  (2d Cir. No. 14-2187, Doc. No. 24.)  On April 22, 2015, the Second Circuit affirmed the conviction and judgment by summary order, holding that the Court did not violate Petitioner's Sixth Amendment right to counsel when it refused to appoint substitute counsel.  *See United States v. Nina*, 607 F. App'x 33, 36 (2d Cir. 2015).  It found that "[t]he District Court carefully inquired into the state of defendant's relationship with his counsel" during the September 11, 2013 hearing, and "issued a thoughtful order denying Antomattei's motion."  *Id.* at 35.  It further noted that "[t]he District Court also acted well within its discretion in casting doubt on defendant's claim that there was a total breakdown in communication between him and his counsel," particularly because his claims "were belied by the frequent communication between counsel and defendant during the pre-trial proceedings, their significant interactions during the trial, and defendant's request for his counsel to be reinstated after the verdict."  *Id.* at 35–36.  On January 13, 2016, Petitioner's conviction became final when the U.S. Supreme Court denied his Petition for a Writ of Certiorari. (2d Cir. No. 14-2187, Doc. No. 71.)

On December 28, 2016, Petitioner filed the instant habeas petition.  Because Petitioner filed his petition *pro se,* the Court reads "his submissions broadly so as to determine whether they raise any colorable legal claims."  *Parisi v. United States*, 529 F.3d 134, 139 (2d Cir. 2008).  First, Petitioner argues that his sentence is invalid because the jury never considered his individual culpability when determining the drug quantity in Counts One and Two – conspiring to possess with intent to distribute heroin, crack cocaine, and PCP.  (Petition at 1, 6.)  Second, Petitioner argues that Shellow provided ineffective assistance of counsel.   (Petition at 9–10.)   The government responds that Petitioner's claim regarding drug quantity is procedurally barred, and that his claims are meritless in any event.  Additionally, Shellow submitted a sworn affirmation contesting Petitioner's ineffective assistance claims.  In his reply, Petitioner contends that his argument regarding the jury's findings of drug weight is not procedurally barred because it was novel and because he received ineffective assistance of appellate counsel.  The Court addresses Petitioner's arguments in turn.

## II. DISCUSSION

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted).  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more

difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).

One such rule is the "procedural default rule," which "prevents claims that could have been brought on direct appeal from being raised on collateral review absent cause and prejudice." *Id.* at 54. In other words, "'[i]n order to raise a claim that could have been raised on direct appeal, a [Section] 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.'" *Id.* (quoting *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993)). The first prong – cause – "requires the movant to show that something '*external* to the petitioner, something that cannot be fairly attributed to him,' resulted in his failure to raise a claim on direct appeal." *United States v. Ortiz*, 962 F. Supp. 2d 565, 570 (S.D.N.Y. 2013) (emphasis in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

To overcome a procedural bar, a habeas petitioner can establish cause if his claim "is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). A habeas petitioner can also establish cause by showing he received constitutionally ineffective assistance of counsel. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).[3] The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). When challenging the effectiveness of counsel's assistance, a party must demonstrate both of the prongs set forth in *Strickland v. Washington*, specifically, that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this

---

[3] Petitioner also argues that his trial counsel provided ineffective assistance of counsel. In addition to constituting "cause" that would overcome a procedural bar, constitutionally ineffective assistance of counsel can be raised as an independent ground for habeas relief that is not subject to the procedural default rule. *See Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012).

"deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   466 U.S. 668, 687–88, 694 (1984).   A court must reject a movant's ineffective assistance of counsel claim if it fails to meet either prong.   *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (citing *Strickland*, 466 U.S. at 687, 690, 694, and *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011)).

When evaluating counsel's conduct, a court must do so "on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."   *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).   "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."   *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91); *see also Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

As to claims of ineffective assistance of appellate counsel, the Supreme Court has held that a defendant does not have a constitutional right to insist that counsel raise every non-frivolous issue on appeal.   *Jones v. Barnes*, 463 U.S. 745, 750-51 (1983).   Instead, "counsel, as a matter of professional judgment," must decide which arguments to present to the appellate court.   *Id.* at 751. The Supreme Court has observed that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   *Id.* at 751–52.   Indeed, any standard requiring appellate counsel "to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy."   *Id.* at 754.   Thus, to establish ineffective assistance based on a failure to raise a viable argument on appeal, a petitioner must show that

9

counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 528.  Overall, however, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

A.  Convictions Under 21 U.S.C. § 841

As explained above, Petitioner argues that his sentence for his convictions under 21 U.S.C. § 841 is invalid "because his individual culpability was not found by the jury," and he was instead "sentenced based on the entire quantity of drugs in the conspiracy."  (Reply at 1, 5–6.)[4]  In response to the government's argument that his claim is procedurally barred (Answer at 16–19), Petitioner contends that he has shown "cause" sufficient to overcome procedural default because (1) the issue of individual culpability issue is "novel" and (2) his appellate counsel was ineffective (Reply at 7–8).  The Court disagrees.

First, Petitioner's claim is clearly not novel, and there was certainly nothing to prevent him from raising this argument before sentencing or on appeal.  Put simply, Petitioner points to no intervening and controlling case law that renders his sentence or his conviction invalid.  *See Reed*, 468 U.S. at 17 (explaining that novelty exists where the Supreme Court "has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application").

Petitioner's second argument – that appellate counsel was ineffective – similarly fails.  As an initial matter, the record reflects that Touger filed a direct appeal arguing that the district court erred in denying Petitioner's motion for new counsel and counsel's request for a continuance.  (2d

---

[4] Petitioner's states that he "*does not* argue whether a judge can use drug quantity and type to enlarge a defendant's sentence."  (Reply at 6 (emphasis in original).)  The Court therefore interprets Petitioner's argument to be only as to the imposition of the mandatory minimum under 21 U.S.C. § 841.

Cir. No. 14-2187, Doc. No. 24.)  Petitioner argues that Touger was ineffective because he "was aware the claim [concerning the jury's findings of drug quantity] existed" but nonetheless "ignored the Petitioner's request to argue all preserved issues on appeal."  (Reply at 8.)  But Petitioner clearly has no constitutional right to have counsel raise every non-frivolous issue, *Jones*, 463 U.S. at 754, and Petitioner has not shown that his specific claim was so "significant and obvious" that Touger was ineffective for failing to raise it, *see Mayo*, 13 F.3d at 533.

But even if it could be argued that Petitioner's procedural default was excused, Petitioner's legal argument clearly fails on the merits.  Under well-established Second Circuit law, "where an indictment alleges a conspiracy involving the weight-related provisions of 21 U.S.C. § 841, the [g]overnment's burden of proof includes the requirement that a co-conspirator defendant at least could have reasonably foreseen the type and quantity of the substance about which [he] conspired." *United States v. Thompson*, 528 F.3d 110, 119 (2d Cir. 2008), *as amended* (July 1, 2008) (internal quotation marks omitted); *see also United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) ("The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly, (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him, and (3) quantities he agreed to distribute or possess with intent to distribute regardless of whether he ultimately committed the substantive act." (internal quotation marks omitted)).  The out-of-Circuit cases that Petitioner cites are not to the contrary.  (*See* Petition at 6.) For example, in *United States v. Daniels*, the Fourth Circuit held, in an unpublished opinion, that the jury must be instructed as to "the amount of drugs 'attributable' to the individual defendant *as a co-conspirator*, as opposed to the quantity of drugs distributed by the entire conspiracy," because a defendant is only "responsible for offenses committed by another co-conspirator if the

11

conspirator was a member of the conspiracy when the offense was committed, and if the offense was committed in furtherance of, or as a foreseeable consequence of, the conspiracy."  323 F. App'x 201, 213–14 (4th Cir. 2009), *as corrected* (June 19, 2009) (emphasis added).

The jury here was accurately instructed on the law.  Indeed, the Court expressly advised the jury that "each defendant is responsible for all quantities of narcotics that [the jury] [finds] he personally distributed or possessed with intent to distribute" and "any quantities of a narcotic distributed by co-conspirators as long as [they] were reasonably foreseeable to the defendant and were within the scope of the criminal activity that [he] jointly undertook."  (App'x 681.)  We presume that juries follow their instructions.  *See United States v. Whitten*, 610 F.3d 168, 191 (2d Cir. 2010).  Here, the jury specifically found that Petitioner was liable for participating in the heroin and crack conspiracy charged in Count One as well as the PCP conspiracy in Count Two, and "knew or reasonably should have foreseen that the conspirac[ies] involved one kilogram or more of mixtures and substances containing a detectable amount of heroin, . . . 280 grams or more of mixtures and substances containing a detectable amount of cocaine base in a form known as crack, . . . [and] one kilogram or more of mixtures and substances containing a detectable amount of PCP."  (App'x 703.)  Thus, even if Petitioner's claim were not procedurally barred, it would fail on the merits.

### B.  Ineffective Assistance of Counsel Claim Under Sixth Amendment

In addition, Petitioner argues that his trial counsel was ineffective because she provided inaccurate advice regarding conspiracy liability (Petition at 9–10; *see also* Reply at 2), and inadequately counseled him regarding the consequences of pleading guilty versus going to trial (Petition at 9; *see also* Reply at 2–4).  Although ineffective assistance of counsel claims may be raised for the first time in a Section 2255 petition rather than direct appeal, *see Massaro v. United States*, 538 U.S. 500 (2003), it is nevertheless clear that Petitioner's claims lack merit.

1.  Counsel's Advice Regarding Conspiracy

First, Petitioner argues that his trial counsel provided inaccurate advice about conspiracy liability – specifically, that he "could be indicted for conspiracy if [he] did not conspire with anyone." (Petition at 9–10.)  Trial counsel counters in a sworn affirmation that "on multiple occasions and at all times, [she] explained to [Petitioner] that a conspiracy is an agreement between at least two people to violate federal law," but that "the [g]overnment was not required to identify by name in the indictment his co-conspirator or co-conspirators." (Affirmation at 6.)

As an initial matter, Petitioner's belated contention that Shellow incorrectly advised him on the law of conspiracy is unsupported by anything in the record.  The issue of trial counsel's effectiveness was extensively discussed before, during, and after trial.  Despite making three separate motions for new counsel, Petitioner never expressed the view that counsel was in any way incompetent, let alone that she misled him as to the elements of the conspiracy counts.  (*See* Petition at 9–10.)

And while it is possible that Petitioner may have misunderstood counsel's advice regarding the law of conspiracy, "there is no duty for an attorney to insure that [her] client understands all that he is told.  Indeed, such a standard would present obvious difficulties, not the least of which is that counsel has no way to measure what someone does or does not understand." *Martinez v. Capra*, No. 13-cv-3657 (RA) (RLE), 2016 WL 127587, at *4 (S.D.N.Y. Jan. 11, 2016) (quoting *Kratsas v. United States*, 102 F. Supp. 2d 320, 325 (D. Md. 2000), *aff'd*, 9 F. App'x 107 (4th Cir. 2001)), *aff'd*, 675 F. App'x 46 (2d Cir. 2017); *see also Romano v. United States*, No. 88-cr-919 (PKL), 1995 WL 566005, at *1 (S.D.N.Y. Sept. 22, 1995) ("The subjective understanding of the client is not the benchmark; rather, the reasonableness of counsel's efforts to communicate the plea offer to his client determines whether the *Strickland* standard has been met."), *aff'd sub nom.*,

*United States v. Gambino*, 101 F.3d 683 (2d Cir. 1996). Nor is there anything in the record to suggest that counsel's explanation was objectively inadequate or that Petitioner sought to communicate his confusion to counsel or otherwise remedy it. Thus, Petitioner's subjective disbelief in his counsel's advice, even after the government expressed in open court that it would file the Superseding Indictment as to Petitioner alone, cannot be attributed to ineffective assistance.

Moreover, even if Counsel did misstate the law, Petitioner has clearly not shown prejudice. In the context of plea bargaining, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. *See Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012) (finding prejudice where the defendant showed that, but for counsel's deficient performance, there was a reasonable probability that the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). Petitioner's statements in open court reflect his intent to reject the plea deal because of the "astronomical numbers" in the existing offer. (App'x 49.) He stated that counsel could not "force" or "try to persuade [him] to try to take [the plea offer] without an option for trial." (*Id.*) The record is clear that Petitioner rejected the initial plea – and two subsequent plea offers – because he was unhappy with the content of those offers, not because he misunderstood counsel's explanation of conspiracy law.

### 2. Prior Felony Information

Petitioner next argues that he did not have the "benefit of [his] attorney's advice" when considering the second and third plea offers because of a "lack of communication with [his] attorney," and that "at no time did [his] co[u]nsel advise [him] of the consequences of taking a plea versus going to trial" or warn him that the government would file a prior felony information. (Petition at 9.) In his Reply, Petitioner shifts his focus, arguing that counsel was ineffective for

failing to warn him, prior to the expiration of the *first* plea offer, of the government's intent to file a prior felony information.  (Reply at 4.)

As is clear from the emails attached to Shellow's Affirmation – the validity of which Petitioner does not dispute – counsel advised Petitioner about the consequences of rejecting the second plea offer, saying that "there is more than sufficient proof for the jury to find . . . that you are guilty, and if you are convicted after a trial your sentence will be significantly longer than the 188–235 months offered by the government."  (Doc. No. 618-2.)  And as early as September 26, 2013, counsel warned Petitioner that the government had expressed its intent to file a prior felony information.  (*Id.*)  Additionally, during the October 15, 2013 pretrial conference, the parties and the Court discussed the consequences of the prior felony information in detail before the government submitted it to the Court.  (S. App'x 52–53.)  Petitioner confirmed that he had previously seen and understood the prior felony information.  (*Id.*)

As for Petitioner's contention that counsel was ineffective at the time of the initial plea offer for failing to inform him "[t]hat the government intended to file enhanced penalties if [he] rejected the plea offers" (Reply at 4), even assuming that counsel failed to warn Petitioner of the potential consequences of refusing to plead guilty at that time, Petitioner cannot establish prejudice.  Petitioner rejected both the second and third plea offers after counsel made clear the government intended to file the prior felony information if he did not plead guilty.  (S. App'x 52–53.)  In fact, during the October 15, 2013 pretrial conference, the government explicitly stated that it had waited to file the prior felony information because it "wanted to see what Mr. Antomattei's response was going to be to the government's plea offer."  (S. App'x 52.)  As discussed above, Petitioner's intent to take his case to trial is clear from the record, and was discussed thoroughly

during each of the prior three hearings where he sought new counsel.  In sum, Petitioner has again made no showing that his trial counsel provided ineffective assistance.

CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the Petition is denied. The Clerk of the Court is respectfully directed to terminate the motion pending at 12-cr-322 document number 614, close 16-cv-9992, and mail a copy of this Opinion and Order to Petitioner.

This Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 259 (2d Cir. 1997).  Further, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the order denying petitioner's motion would not be taken in good faith.  *See Feliz v. United States*, No. 01-cv-554 (JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002).

SO ORDERED.

Dated:      July 13, 2020
            New York, New York

_____
RICHARD J. SULLIVAN
United States Circuit Judge
Sitting by Designation