UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

CANDIDO ANTOMATTEI,

                Defendant.

No. 12-cr-322-2 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

      Defendant Candido Antomattei moves for a sentencing reduction pursuant to both 18 U.S.C. § 3582(c)(1)(A)(i) and § 3582(c)(1)(B), in light of Congress's 2018 changes to the sentencing guidelines under the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. (Doc. No. 675.) The Government opposes. (Opp'n, Doc. No. 678.) For the reasons discussed below, Antomattei's motion is DENIED.

## I.    Background[1]

      From approximately 2008 until 2011, Antomattei participated in a drug trafficking organization ("DTO") operating in the Bronx. (PSR ¶¶ 22–24.) The DTO "operated 24 hours a day, seven days a week, serving customers with hundreds of bags of crack cocaine each day"; it also sold heroin. (PSR ¶ 24.) In the course of the conspiracy, "[s]everal members of the DTO also carried firearms during and in relation to their illegal drug trafficking activities, some of which were brandished and discharged." (PSR ¶ 22.)

      Antomattei was a leader in the DTO until early 2011, when he had a "falling out" with the operation's other leader, Adony Nina. (PSR ¶¶ 23–25.) Despite this "falling out," Antomattei

---

[1] The facts are drawn from Antomattei's Presentence Investigation Report (Doc. No. 325 ("PSR")) and the transcript from his sentencing proceeding held on June 10, 2014. (Doc. No. 363 ("Sentencing Tr.")).

continued to receive crack cocaine from Nina, and "began operating a separate [phencyclidine ('PCP')] distribution organization . . . with several subordinates." (PSR ¶ 25.) Over the course of several months in 2011, this separate organization "distributed over one kilogram of PCP." (PSR ¶ 25.) On about February 27, 2013, Antomattei was arrested by Task Force officers pursuant to federal arrest warrants. (PSR ¶ 34.) Antomattei was ultimately found responsible for distributing over 8.4 kilograms of crack cocaine, over one kilogram of heroin, and over one kilogram of PCP. (PSR ¶ 37.)

On September 11, 2013, a grand jury in the Southern District of New York charged Antomattei with: (1) conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, and 280 grams or more of crack, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count One); (2) conspiracy to distribute and possession with intent to distribute one kilogram or more of PCP, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count Two); and (3) the use of a firearm, which was brandished, in furtherance of the drug trafficking counts, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 2 (Count Four). (PSR ¶¶ 1−3, 5.) Antomattei proceeded to trial before a jury and was found guilty on all three counts on October 31, 2013. (PSR ¶ 10; Verdict Form, Doc. No. 195.) Because the government had filed a prior felony information pursuant to 21 U.S.C. § 851 based on Antomattei's prior conviction of a narcotics felony in state court (Doc. No. 188), Antomattei faced a mandatory minimum sentence of twenty years' imprisonment for the drug trafficking offenses. (Sentencing Tr. at 13.) He also faced a mandatory consecutive term of seven years for the section 924(c) count. (Sentencing Tr. at 13.)

At Antomattei's sentencing on June 10, 2014, the Court calculated Antomattei's guideline sentence to be life imprisonment for the narcotics offenses, based on a total offense level of 43,

the highest permitted under the guidelines, and a criminal history category of VI, also the highest category under the guidelines. (Sentencing Tr. at 17−18.) In making its sentencing determination, the Court emphasized that the "consequences to society, to communities, [and] to families [from Antomattei's drug trafficking] is really staggeringly high," and that Antomattei's "organization used guns on a daily basis." (Sentencing Tr. at 35.) Nevertheless, noting Antomattei's role in the offense and the difficult circumstances of Antomattei's childhood, the Court ultimately imposed a below-guidelines sentence of twenty-three years for the narcotics offenses, stating "it's far less than . . . life, which is what the guidelines recommend, but I think it's appropriate[.]" (Sentencing Tr. at 38.) The Court also imposed a seven-year mandatory consecutive sentence for the gun count, for a total sentence of thirty years. (Sentencing Tr. at 38.)

Following his sentencing, Antomattei filed a direct appeal with the Second Circuit, which affirmed his conviction and sentence. (Doc. No. 530.) He later filed a habeas petition under 28 U.S.C. § 2255, which was denied. (Doc. No. 670.) The Court also denied Antomattei's request, by letter dated February 26, 2019, for "any and all relief under the First Step Act[.]" (Doc. No. 654.)

On March 5, 2021, Antomattei filed the instant motion requesting: (1) a sentence reduction under 18 U.S.C. § 3582(c)(1)(B); or (2) compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 675.)[2]

---

[2] Although the government asserts that there is no record of Antomattei making a request for administrative relief from the Bureau of Prisons, as required under section 3582(c)(1)(A), the government nonetheless "assumes for purposes of responding to the motion (and without conceding the point), that Antomattei has met the exhaustion requirements of Section 3582(c)(1)(A)(i)." (Opp'n at 4.) *See also United States v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021) ("[Section] 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government.")

3

## II. Discussion

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). Antomattei contends that sections 3582(c)(1)(B) and 3582(c)(1)(A), both of which were enacted as part of the First Step Act of 2018, entitle him to judicial relief. (Doc. No. 675, at 10−12, 17, Ex. B.) The Court addresses each argument in turn.

### A. Sentence Reduction under Section 3582(c)(1)(B)

Antomattei asserts that he is eligible for a sentence reduction under section 404 of the First Step Act, which addresses the retroactive application of the Fair Sentencing Act of 2010. The Fair Sentencing Act "increased the quantities of crack cocaine that . . . trigger certain statutory sentence ranges," and the First Step Act, enacted eight years later, "gives district courts discretion to consider whether to reduce sentences for specified offenses that had been imposed before the Fair Sentencing Act[.]" *United States v. Fletcher*, 997 F.3d 95, 96 (2d Cir. 2021) (citing First Step Act § 404(b), 132 Stat. at 5222). Section 404 of the First Step Act "provides courts with authority to reduce sentences only if they were imposed for violations of a covered offense." *Id.* at 97 (internal quotation marks omitted). The government does not dispute that the narcotics distribution conspiracy charged in Count One, one object of which was to distribute 280 grams or more of crack cocaine, is a "covered offense" under the First Step Act.[3] Nevertheless, it correctly notes that Antomattei has already received the benefit of the Fair Sentencing Act amendments for that offense. (Opp'n at 6.) Specifically, the Fair Sentencing Act, which applied to defendants

---

[3] Because sections 2 and 3 of the Fair Sentencing Act did not alter the drug quantity thresholds for PCP, the distribution of which was the object of the conspiracy charged in Count Two, Count Two is not a "covered offense" under the First Step Act. *See United States v. Davis*, 961 F.3d 181, 186 (2d Cir. 2020) ("[T]he term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." (quoting First Step Act § 404(a), 132 Stat. at 5222)).

sentenced on or after August 3, 2010, "increased the threshold required to trigger a 10-year mandatory minimum sentence from 50 grams to 280 grams of crack cocaine." *United States v. Martin*, 974 F.3d 124, 131 (2d Cir. 2020) (citing Pub. L. No. 111-220, §§ 2–3, 124 Stat. 2372); *United States v. Bryant*, 991 F.3d 452, 454 (2d Cir. 2021). Antomattei, who was sentenced in 2014 and who distributed 280 grams or more of crack cocaine (Jury Verdict, Doc. No. 195), was thus sentenced in accordance with sections 2 and 3 of the Fair Sentencing Act and is not entitled to further relief under section 404.

Antomattei's primary argument, then, is that he is entitled to relief under section 401 of the First Step Act, which reduced from twenty years to fifteen years the mandatory minimum sentence for offenses under 21 U.S.C. § 841(b)(1)(A) committed after a prior conviction for a "serious drug felony." First Step Act § 401(a)(2)(A)(i), 132 Stat. at 5220. Unfortunately for Antomattei, however, that provision does not apply retroactively to sentences imposed before the "date of enactment," which was December 21, 2018. *Id.* § 401(c), 132 Stat. at 5221; *see also Bryant*, 991 F. 3d at 458 ("[T]he plain text of [s]ection 401(c) limits the retroactive applicability of [s]ection 401(a) to defendants who committed offenses before the First Step Act became law only if they did not yet have a sentence imposed as of the date of enactment[.]"). Because Antomattei was sentenced in 2014, years before the First Step Act was enacted, he not is not eligible for relief under section 401.

### B. Compassionate Release

Antomattei also seeks a sentence reduction, "often referred to as 'compassionate release,'" pursuant to 18 U.S.C. § 3582(c)(1)(A). *United States v. Ogarro*, No. 18-cr-373 (RJS), 2020 WL 1876300, at *2 (S.D.N.Y. Apr. 14, 2020). Section 3582(c)(1)(A) permits a district court to reduce a defendant's sentence where (1) "extraordinary and compelling reasons warrant such a reduction,"

and (2) such relief would be consistent with both the objectives of sentencing set forth in 18 U.S.C. § 3553(a) and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). A district court has discretion "to identify what facts constitute extraordinary or compelling reasons deserving of compassionate release." *Musa v. United States*, 502 F. Supp. 3d 803, 809 (S.D.N.Y. 2020) (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237–38 (emphasis in original) (citing 28 U.S.C. § 994(t)).

Antomattei argues that the First Step Act's subsequent reduction of the mandatory minimum sentences applicable to Counts One and Two from twenty years to fifteen years constitutes an "extraordinary and compelling" change in circumstances warranting a reduction of his sentence. (Doc. 675 at 10−12.) The Court is not persuaded. Indeed, as the Court recently noted in rejecting a similar request for compassionate release under the First Step Act, it is "Congress itself [which] chose to permit such a disparity to continue" when it declined to make the reduction retroactive. *Musa*, 502 F. Supp. at 809.

To be sure, the Court acknowledged that the changes to the law under the First Step Act could support a motion for compassionate release in the presence of "additional, individualized factors justifying [a defendant's] release." *Id.* Here, the one additional factor Antomattei points to in support of his application is his rehabilitative efforts, including numerous certifications, a perfect disciplinary record, and a productive lifestyle in prison. (Mot. at 16; Ex. A.) But while Antomattei's rehabilitative efforts are impressive and worthy of praise, the Court cannot conclude that these efforts, even considered in tandem with the First Step Act's reductions to the mandatory minimum sentences applicable to recidivists, constitute "extraordinary and compelling

6

circumstances" justifying compassionate release or a sentence reduction. *Cf. United States v. Vargas*, 502 F. Supp. 3d 820, 826 (S.D.N.Y. 2020) (granting motion for compassionate release where original sentence, imposed under the then-mandatory Sentencing Guidelines, had been "draconian and exceptionally harsh," and where the defendant demonstrated rehabilitation over the latter sixteen years of his time in prison, had an increased risk of contracting COVID-19, and desired to care for his ill, elderly mother.)[4]

But even if Antomattei had met this threshold requirement, his motion would still fail. Before granting a motion for compassionate release, the Court must also consider the objectives of sentencing set forth in 18 U.S.C. § 3553(a) "to determine whether those factors outweigh the extraordinary and compelling reasons warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *Ogarro*, 2020 WL 5913312, at *2 (internal quotations and citations omitted). Those sentencing factors include (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

In this case, the section 3553(a) factors weigh heavily against granting Antomattei's request for a sentence reduction. As the Court emphasized at sentencing, Antomattei's drug trafficking offenses, which included the frequent use of guns, are serious crimes with "staggeringly

---

[4] The out-of-circuit cases cited by Antomattei (Doc. No. 675 at 9−10) are not binding on the Court and are readily distinguishable, as each involved much more substantial changes to the applicable mandatory minimum sentences under the First Step Act. *See, e.g.*, *United States v. Bryant*, No. CR 95-202-CCB-3, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020) (concluding that "extraordinary and compelling" circumstances existed where the First Step Act "substantially amended" the prior sentencing scheme of stacking section 924(c) charges, reducing the appliable mandatory minimum from 45 to 15 years); *see also United States v. Williams*, No. 5:12-CR-14, 2020 WL 5834673, at *8 (W.D. Va. Sept. 30, 2020) (same, where the First Step Act "dramatic[ally] change[d]" the applicable mandatory minimum from a life sentence to ten years).

high" consequences to society, to communities, and to families. (Sentencing Tr. at 35.) Further, although Antomattei's argument is based on the mandatory minimum applicable at the time of his sentencing, the Court made clear that Antomattei's role, criminal history, gun use, and involvement in multiple conspiracies militated against the imposition of the minimum sentence. (Sentencing Tr. at 36.) Indeed, Antomattei's guidelines range on the drug offenses alone was life, and the Court's imposition of a twenty-three-year sentence already constituted a significant reduction that is unaffected by the subsequent reforms enacted under the First Step Act. Thus, while Antomattei's rehabilitative efforts are encouraging, the nature and seriousness of the conduct involved – including Antomattei's leadership role and persistent involvement in the drug trade – persuade the Court that a sentence reduction is not warranted.

### III. Conclusion

For the reasons set forth above, Antomattei's motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at document number 675.

SO ORDERED.

Dated:  January 5, 2022
        New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation